COURT OF APPEALS OF VIRGINIA


Present: Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


STEVEN CRESPO

                                    MEMORANDUM OPINION* BY
v.    Record No. 2045-02-2        JUDGE JERE M. H. WILLIS, JR.
                                         JUNE 3, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                      James A. Luke, Judge

            Stephen L. Hewlett for appellant.

            Amy Hay Schwab, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     On appeal from his conviction as a principal in the second

degree of malicious wounding and use of a firearm in the

commission of a felony, Steven Crespo contends that the evidence

was insufficient to support his convictions and argues that the

Commonwealth's evidence failed to "exclude every reasonable

hypothesis except that of guilty, and that it is not inconsistent

with his innocence." We affirm the judgment of the trial court.

     "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.'" Archer v.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

(citation omitted).  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

As Alan Rufus and Chris Thorsen left a house to get into their car, Rufus saw three or four men who were "[p]robably African American" standing around the corner.  They were armed with a handgun and a shotgun.  One of the men approached Rufus, put his arm around Rufus's shoulder, and demanded money.  After the man "put a gun to" Rufus, Rufus gave him his wallet.  The man said, "I know you have something else."  When Rufus denied having anything else, the man hit Rufus in the head, causing an injury that required thirteen stitches.  As Rufus "scrunched up" under the car, he heard gunshots.

Detective George Burgess investigated the incident.  Based on the evidence he collected, Burgess developed a list of suspects, one of whom was Larry Starks.  Following an unrelated incident, a shotgun was recovered.  Based on results from

-

testing this shotgun, Starks was charged with assaulting and robbing Rufus.

During the course of Starks's prosecution, the Commonwealth's Attorney provided a copy of a letter Crespo had written to Starks.  In this seven-page letter, which was admitted into evidence in Starks's trial, Crespo wrote:

> Now about this case, I know it's hard for you and all and your [sic] worried and don't know what to do.  You say you want to snitch, I can't tell you what to do but if you think and listen to what I say you will see I'm trying to help you out.  I'm going to tell you like this if you do turn us in you know you will have to testify against us.  Then what you going to say either that you were with us but you were just driving the car, and you'll still get in trouble because you suppose to report any crime that you seen or no [sic] about to the police or you can get a charge for that (go to the law library) and also for lying to the police because then who was driving the car plus there [sic] going to ask you all types of questions like how you know this and that why you ended up w/the gun and if it was your [sic] how did we get it.  Regardless if you snitch or not I'm not going to snitch on you about your driving the car and being part of it because I want to see you go home plus snitching ain't me my dad tought [sic] me that. . . . [R]emember even thou [sic] you weren't at the actual scene you were part of it we were all together you were just driving the car.  I take blame and responsibility for my actions.  I know what I did and that this is part my fault but realize that I got almost the same blame as you, just a little more, we were all in it together, I just went and did more but remember that I didn't do the smacking with

-

the gun or the shooting the car.  I didn't
do nothing to get us cought [sic]. . . .

I know we did [f---] up we should help pay
your lawyer or get a better lawyer, I ain't
got no excuse for that; I don't blame you
for hating me for that even tho [sic] I put
money in your books it weren't [sic] much
but it still don't make up for that. . . .

I know that after words [sic] we could blame
it on Chris and get away w/it but after you
put it on us you have to tell the truth to
get us found guilty or the Commonwealth
won't let you get away plus by getting them
charged I'll get kicked out of this program
and if I do beat the charges I'll have to
start my time all over.  This is what I
think you should do and say . . . .  First
the main idea is for all of us to go home
and not have to do time for this.  So put it
on Chris.  Just say you had lent the car to
Chris that night and the only reason you did
was because he had a license.  You had your
car, me you and Will were together ya'll
dropped me off at Keosha house and ya'll
were planing [sic] on going to Richmond but
when ya'll stopped at your Grandma's house
ya'll decided to stay since alot [sic] of
your family was there and they were playing
card [sic] and having a good time.  When you
had lent the Stanza to Chris you must of
[sic] left the hat in the car.  (That's two
of the evidence).  The next day Chris
brought you the car back but he ain't never
tell you what happened (you didn't know
nothing about it, but you had a feeling when
they towed the car and talked to us about
it).  A couple of day's [sic] later Chris
asked you to hold the gun after him he put
it under your seat himself, then Chris got
killed and you got stuck w/the gun, you had
forgot about it and got cought [sic] w/it
(That's the other two evidence).

     This way Will and I don't have to be
mentioned as doing it and since you didn't

-

know nothing about it that's less questions
and more hope (Chris is dead plus he is
already known for robbery), also get as many
of your people to be witnesses to say that
you and Will were at your Grandma's house
all night till the next morning (that will
help <u>alot</u>)[sic] . . . .

P.SS . . . First you messed up telling
your lawyer the truth because at first he
said you were ok [sic] and that they didn't
have enough evidence and that you had a very
good chance of beaten [sic] the charges and
now it's the total opposite.  He probably
went and told the police that's why they
said you couldn't beat it to convince you to
snitch (to scare you).

Detective Burgess took this letter and visited Crespo at

Riverside Jail.  He advised Crespo of his <u>Miranda</u> rights.  When

Burgess said he wanted to talk about Starks and the robbery,

Crespo said, "I know what you are talking about, yes."  Burgess

took two statements from Crespo before showing him the letter.

After Crespo's first statement, Burgess suggested that Starks

had provided a different story, that Starks claimed to have been

at his grandmother's house.  Crespo then gave another statement,

adding that Starks had been at his grandmother's and explained

the presence of a hat that had been collected as evidence.  When

Burgess then showed Crespo the letter, Crespo "was kind of taken

back . . . and after a moment or so" admitted that he had

written the letter.  Burgess referred to the robbery when he

asked Crespo about the letter.

-

At trial, Crespo admitted being present during the robbery, but claimed he was "staying outside the car" and "went down the street." He claimed he did not know the robbery was occurring, and only learned of the robbery when the police talked to him later that day. He admitted writing the letter after talking to the police. He admitted it was his idea to "blame Chris" for everything. He also admitted his statement that if Starks testified truthfully, he (Crespo) would be found guilty, and that he wrote the letter to help Starks and himself. He testified that he did not intend to implicate himself in robbery, malicious wounding, or firearm charges when he wrote the letter to Starks. He asserted that he is not African-American.

The trial court, sitting as fact finder, believed the Commonwealth's evidence and rejected portions of Crespo's evidence. It found that the Commonwealth had proved beyond a reasonable doubt that, as a principal in the second degree, Crespo committed malicious wounding and used a firearm in the commission of a felony. This finding is supported by direct evidence that proved Crespo's guilt beyond a reasonable doubt. "[W]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every conceivable possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a

-

reasonable doubt."  Saunders v. Commonwealth, 18 Va. App. 825, 829, 447 S.E.2d 526, 529 (1994).

Direct evidence proved that someone took Rufus's wallet from him at gunpoint and hit him on the head, inflicting an injury that required thirteen stitches.  Direct evidence proved that these acts were done by one from a group of three or four men who were "probably" African-American.  Although Crespo denied being African-American, his race is listed on his arrest warrant as "H," which presumably denotes Hispanic.  No evidence refuted his perception as African-American.  When Burgess went to the jail and told Crespo he wanted to talk to him about Starks and the robbery, Crespo said, "I know what you are talking about, yes."  He admitted writing the incriminating letter to Starks.  He admitted being present during the robbery, claiming only that he was "outside the car" and was "down the street."  He admitted that it was his idea to blame Chris for everything, and admitted that he wrote that if Starks testified truthfully, he (Crespo) would be found guilty.  This evidence was sufficient to establish Crespo's guilt beyond a reasonable doubt.

The judgment of the trial court is affirmed.

Affirmed.

-